Troy P. Foster #017229
Milca C. Altamirano #039072
**The Foster Group, PLLC**
902 W. McDowell Rd.
Phoenix, Arizona 85007
Tel: 602-461-7990
tfoster@thefosterlaw.com
maltamirano@thefosterlaw.com
*Counsel for Plaintiff*

Monica M. Ryden #023986
Jacqueline M. Palazzolo #039977
**JACKSON LEWIS P.C.**
2111 East Highland Avenue, Suite B-250
Phoenix, AZ 85016
Telephone: (602) 714-7044
Monica.Ryden@jacksonlewis.com
Jacqueline.Palazzolo@jacksonlewis.com
*Attorneys for Defendant*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Matthew Heyman, an individual,<br><br>　　　　　　　　Plaintiff,<br><br>vs.<br><br>Verizon Select Services, Inc., a foreign corporation,<br><br>　　　　　　　　Defendant. | No.: 2:25-CV-00581-DLR<br><br>**JOINT REPORT** |

　　　Pursuant to the Court's Order dated March 27, 2025 (Doc. 11) and FRCP 26(f), Plaintiff Matthew Heyman ("Plaintiff") ("Mr. Heyman") and Defendant Verizon Select Services, Inc., ("Defendant") (collectively, the "Parties") respectfully submit this Joint Report.

1

1. **The parties who attended the Rule 26(f) meeting and assisted in developing the Case Management Report and the date of the meeting:**

Troy Foster and Milca C. Altamirano, representing Plaintiff Matthew Heyman, and Monica M. Ryden and Jacqueline M. Palazzolo, representing the Defendant, met and assisted in the preparation of this report.

2. **A short statement of the nature of the case (3 pages or less), including a description of each claim and defense:**

*<u>Plaintiff's Statement</u>*

Plaintiff Matthew Heyman ("Plaintiff") worked for Defendant from approximately 2002 to August 2023. Plaintiff brings claims pursuant to the Family and Medical Leave Act of 1993.

In early May 2023, Mr. Heyman became ill with Covid-19. This infection was his second – from which he never fully recovered once infected in March 2020. The symptoms and associated diagnoses constituted a serious medical illness covered by the FMLA. Defendant was aware of the illness, his previous infection, the continuing problems associated with that, and Mr. Heyman's protected leave. Mr. Heyman's boss demanded that he join a zoom call during his illness. Mr. Heyman joined the call, and Defendant informed him that he would be terminated.

On June 17, 2023, Mr. Heyman opened a short-term disability claim because his symptoms continued after testing negative for weeks. Mr. Heyman was concerned as he had never felt the same after first being infected in March of 2020. On June 26, 2023, David Tinsley (Mr. Heyman's supervisor) informed Mr. Heyman via text that he needed a letter from the doctor for his short-term claim. Mr. Heyman let Mr. Tinsley know that he had sent all of the paperwork to Sedgwick – the Defendant's third-party administrator.

Mr. Tinsley began sending intrusive texts about Mr. Heyman's medical condition. Mr. Heyman felt that the questions were invasive, and they made him feel uncomfortable. Mr. Tinsley made clear that he was upset that Mr. Heyman had taken protected leave and did not believe the severity or length of the illness. At Mr. Tinsley's request, Mr. Heyman

2

answered the invasive medical questions, detailing certain appointments, conditions, symptoms, and treatments.

On July 5, 2023, Mr. Heyman turned in all of his Verizon assets to his supervisor David Tinsley. There was no mention of an exit interview or his claim. There was no mention of the reason for his selection for prospective termination. He was not informed that he was being terminated.

On July 10, 2023, Mr. Heyman received a text from Mr. Tinsley asking if he was still on short term disability. On July 26, 2023, Mr. Heyman received a voice mail from Mr. Tinsley checking on him followed by a text telling him that he was told he requested an extension of his disability leave. Mr. Heyman informed Mr. Tinsley that Human Resources suggested that he file for an extension because he was still having fatigue, headaches, shortness of breath and heightened blood pressure. Mr. Heyman let Mr. Tinsley know that the extension was requested, and that Defendant's TPA had the documentation from the pulmonologist, cardiologist, and primary care providers.

On July 28, 2023, Mr. Tinsley left Mr. Heyman another voicemail. No information about any further extensions needed was given. No information concerning the status of his leave, claim, or employment were provided to Mr. Heyman.

On August 8, 2023, Plaintiff logged in to check the status of his claim and noticed he had no open claims. Mr. Heyman immediately sent a text to Mr. Tinsley stating he needed to speak with Human Resources. Mr. Tinsley responded and told him that he left Human Resources a voicemail. However, Mr. Tinsley refused to provide a phone number for someone in Human Resources because he had surrendered his assets.

On August 9, 2023, Mr. Heyman filed an appeal with Sedgwick for closing his claim. He also continued calling and texting Mr. Tinsley; no one with Defendant informed Mr. Heyman about the status of his leave, claim, or employment.

Mr. Heyman made multiple attempts to speak with Human Resources with no luck. Defendant, through Mr. Tinsley, interfered with Mr. Heyman's right to learn the status of his leave, claim, and employment. Mr. Tinsley had sent texts to Mr. Heyman that were meant for the HR Representative and not Mr. Heyman. Those texts revealed that Defendant,

3

through Mr. Tinsley intended to interfere with Mr. Heyman's leave, claim for disability, and his employment. Mr. Heyman never heard from Mr. Tinsley or Human Resources again.

On August 15, 2023, Plaintiff emailed Human Resources because Sedgwick informed him that he could not file an appeal. The basis for Mr. Heyman's inability to file an appeal was because, as he first learned through Sedwick, he was no longer employed with Verizon.

Defendant took adverse action again Mr. Heyman because of his serious medical condition and his request for statutorily protected leave. Defendant failed to provide Plaintiff with information related to his leave such that he could take advantage of his rights, and retaliated against Mr. Heyman for engaged in protected activity. Defendant's actions were intentional and damaged Mr. Heyman.

### *Defendants' Statement*

Defendant unequivocally denies Plaintiff's allegations. Plaintiff was employed with Verizon from 2002 through July 1, 2023. In or about May 2023, Plaintiff and others were chosen for separation as part of a companywide reduction in force, effective July 1, 2023. On May 24, 2023, after being notified of his layoff, Plaintiff called Defendant's attendance hotline to request time off due to symptoms of "Long-COVID." Despite the impending reduction in force, Defendant granted Plaintiff paid sick time through June 30, 2023. Verizon also advised Plaintiff to apply for FMLA short term disability benefits before he was separated from payroll on or about July 1, 2023.

On or about June 19, 2023, Plaintiff applied and was granted benefits through June 30, 2024. On June 29, 2023, three days before being removed from payroll, Plaintiff inquired about an extension of benefits. Plaintiff's employment with Defendant was officially separated on July 1, 2023, and he was removed from payroll. Eleven days passed before Plaintiff applied for the extension of FMLA benefits on July 10, 2023. Despite the request coming nine days after her separation, his benefits were extended through August 1, 2023.

On or about August 8, 2023, more than one month after his separation, Plaintiff called Defendant's absence hotline to request a second extension of benefits. However, because he was officially a "former employee" at that time, his request was not granted.

4

Verizon denies any liability to Plaintiff. His termination was part of a companywide reduction in force and completely unrelated to his requests for FMLA benefits. Because no discovery has yet occurred in this action, Defendant reserves the right to assert further defenses as appropriate, including but not limited to failure to mitigate damages.

**3. A description of the principal factual and legal disputes in the case:**

   a. Whether Plaintiff engaged in protected activity pursuant to the FMLA.
   b. Whether Defendant interfered with Plaintiff's rights pursuant to the FMLA.
   c. Whether Defendant retaliated against Plaintiff for engaging in taking protected leave.
   d. Whether, and to what extent, Defendant's actions damaged Plaintiff.

**4. The jurisdictional basis for the case, citing specific jurisdictional statutes:**

The Court has original jurisdiction as to Mr. Heyman's FMLA claims as provided by 28 U.S.C. § 1331.

**5. Any parties which have not been served and an explanation of why they have not been served; and any parties which have been served but have not answered or otherwise appeared:**

None.

**6. A statement of whether any party expects to add additional parties to the case or otherwise amend pleadings:**

The parties do not anticipate adding parties or amending the pleadings.

**7. A listing of contemplated motions and a statement of the issues to be decided by these motions a(including motions under Federal Rules of Evidence 702, 703, 704, and 705):**

The parties do not anticipate any case dispositive motions prior to the initiation of discovery. The parties may, at the conclusion of discovery, file summary judgment motions, if appropriate.

**8. Whether the case is suitable for reference to arbitration or a United States Magistrate Judge for trial:**

5

The parties do not believe this matter is appropriate for referral to a Magistrate Judge for trial. However, the parties may request referral for a settlement conference.

9. **The status of related cases pending before other courts or other judges of this Court:**

   None.

10. **A statement of when the parties exchanged Federal Rule of Procedure 26(a) initial disclosures:**

    The parties met and conferred on May 20 and exchanged initial disclosure statements on May 19, 2025.

11. **A discussion of necessary discovery including:**

    a. **The extent, nature, and location of discovery anticipated by the parties:**

    Mr. Heyman anticipates propounding written discovery and taking depositions of the Defendant's manager and two or three fact witnesses all located in this District.

    Defendant anticipates propounding written discovery and taking Plaintiff's deposition. At this time, there are no known issues regarding preservation, disclosure, or discovery of electronically stored information ("ESI"). The parties have undertaken efforts to retain relevant ESI and have agreed that, unless the requesting party asks for a definite and specific form, the party producing any ESI need not provide such information in any certain form as long as the form provides the other party with reasonable access to the information. The production of privileges or work-product documents, ESI, or other information, whether inadvertent or otherwise, is not a waiver of the privilege or protection from discovery in this case or in any other federal or state proceeding. Defendant will seek an order from the Court providing the maximum protection allowed by the Federal Rule of Evidence 502(d). Nothing contained in Defendant's request is intended to limit a party's right to conduct a review of documents, ESI or other information for relevant, responsiveness, and/or segregation of privilege and/or protected information before production.

    **b. Suggested changes, if any, to the discovery limitations imposed by the Federal Rules of Civil Procedure:**

None.

    **c. The number of hours permitted for each deposition, unless extended by agreement of the parties:**

The parties believe that the presumptive seven-hour limitation for parties and four hours for fact witnesses should suffice.

12. **Proposed specific dates for each of the following (deadlines should fall on a Friday unless impracticable):**

    a. A deadline for the completion of fact discovery and disclosure pursuant to Rule 26 (a)(3):  February 13, 2026

    b. Expert Deadlines:

        1. The Plaintiff shall provide full and complete expert disclosures as required by Rule 26(a)(2)(A)-(C) of the Federal Rules of Civil Procedure no later than October 24, 2025.

        2. The Defendant shall provide full and complete expert disclosures as required by Rule 26(a)(2)(A)-(C) no later than December 5, 2025.

        3. Rebuttal expert disclosures, if any, shall be made no later than January 30, 2026. Rebuttal experts shall be limited to responding to opinions stated by initial experts.

        4. Expert depositions shall be completed no later than March 6, 2026.

    c. A deadline for filing dispositive motions:  April 10, 2026

    d. A date by which the parties shall have engaged in good faith settlement talks: January 16, 2026

13. **Whether a jury trial has been requested:**

A jury trial has been properly requested.

14. **The estimated length of trial and any suggestions for shortening the trial:**

The parties anticipate the trial lasting four days.

**15. The prospects for settlement, including any request of the Court for assistance:**

It is too early to determine, but the parties will request the Court's assistance, when appropriate.

**16. Any other matters that will aid the Court and parties in resolving this case in a just, speedy, and inexpensive manner as required by Federal Rule of Civil Procedure 1:**

None.

**RESPECTFULLY SUBMITTED** this 27th day of May, 2025.

**The Foster Group, PLLC**

/s/   *Troy Foster*
Troy P. Foster
Milca C. Altamirano
902 W. McDowell Rd
Phoenix, AZ 85007
*Counsel for Plaintiff*

*/s/ Monica M. Ryden (with permission)*
Monica M. Ryden #023986
Jacqueline M. Palazzolo #039977
**JACKSON LEWIS P.C.**
2111 East Highland Avenue, Suite B-250
Phoenix, AZ 85016
*Attorneys for Defendant*